IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN JANIS                             :          CIVIL ACTION
                                       :
            v.                         :
                                       :
LA-Z-BOY FURNITURE GALLERIES    :          NO. 05-2410

MEMORANDUM

**Padova, J.**                                          **March 17, 2006**

Plaintiff, John Janis, has brought this action against his former employer, La-Z-Boy Furniture Galleries ("La-Z-Boy"), asserting claims for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and for wrongful termination under state common law. Before the Court is Defendant's Motion for Summary Judgment. A Hearing was held on the Motion on March 15, 2006. For the reasons that follow, Defendant's Motion is granted.

I.      BACKGROUND

Janis worked as a sales associate in La-Z-Boy's Langhorne, Pennsylvania store from October 26, 2003 through April 25, 2004. (Welch Decl. ¶ 2.) His official termination date was April 30, 2004. (Def. Ex. 13.) Leonard Kolbes was the store manager at the Langhorne La-Z-Boy store and Plaintiff's direct supervisor during the time that Plaintiff was employed by La-Z-Boy. (Janis Dep. at 193.) Janis had no problems working with Kolbes until mid-February 2004. (Janis Dep. at 198-200, 210.) After that, Janis had a personality conflict with Kolbes about a whole host of things. (Id. at 210.) Janis stated during his deposition that he believes that the conflict began because, after he had been at the store for a while, other sales associates sought advice from him rather than from Kolbes, which bothered Kolbes. (Id. at 198-99.) Kolbes was highly critical of all of the sales associates, including Janis. He criticized their sales performances and the way they handled

customers, and treated all of the sales associates disrespectfully.  (Id. at 204-06, 210-11.)  Indeed, Nancy McDonough, who was also a sales associate at La-Z-Boy's Langhorne store during the relevant time period, has stated that Kolbes treated Janis with particular disrespect, yelling and screaming at him for no reason in front of co-workers. (McDonough Dep. at 34-36.)  McDonough believes that Kolbes treated Janis badly because Janis was a great employee and Kolbes was jealous of him.  (Id. at 86.)

Janis grew disturbed by Kolbes's treatment of his sales associates.  Janis asserts that Kolbes took business away from his sales associates by taking their "ups."  La-Z-Boy, including its Langhorne store, uses an "ups" system to determine the order in which sales associates approach and work with new customers. (Welch Decl. ¶ 6.)  Each sales associate's name is on a list and when a customer comes into the store, the sales associate at the top of the list greets and works with that customer.  (Id.)  That sales associate's name is then crossed off the top of the list and the next sales associate is "up" and ready to serve the next customer.  (Id.)  When a sales associate finishes with a customer, his or her name goes on the bottom of the list.  (Id.)  According to Janis, Kolbes would never write his name on the sign-in sheet for sales and would just jump around, taking whichever customer he felt like taking.  (Janis Dep. at 117, 119.)  He took "ups" from all of the sales associates, not just Janis.  (Id. at 120.)  Kolbes would also leave furniture samples all over the store and make the sales associates clean them up; he also allowed people to take home samples, which was against store policy.  (Id. at 118.)

Janis also contends that Kolbes took sales commissions belonging to other sales associates by cancelling their sales and rewriting them in his own name.  (Id. at 153-54.)  Janis confronted Kolbes about those sales and was rebuffed.  Janis reports that Kolbes said: "I'm servicing the

customer.  I'm the store manager.  You're not.  Don't tell me what to do." (Id. at 155.)  Janis

believes that Kolbes took two of his sales.  (Id. at 220.)  Janis discovered this when he checked his

sales on the store computer system:

> I was checking another sale of mine and I noticed the last name.  I
> clicked on the name, brought up the sale information to the computer
> and there was the whole entire sale.  I checked my sheets, in my desk
> and I brought it up and it was piece for piece exactly what it was and
> my name was taken off and rewritten under his name.  It shows all the
> cancellation [sic] on there.  It shows all the rewrites on there as well;
> on the computer system.

(Id. at 223.)

Janis also witnessed Kolbes discriminate against and harass female sales associates.  Kolbes

discriminated against and harassed women by referring to them "in a non-professional manner as

broads, housewives, kitchen cleaners" and by commenting on "the way they dressed, the way their

hair was."  (Janis Dep. at 249.)  He also delegated "duties that they were more capable of doing

instead of lifting boxes, lifting chairs, climbing ladders; because they are weak and fragile, from

what he said, how he describes women, that they are not capable of doing it."  (Id. at 249-50.)  He

also often said that "[a] woman's place is in the kitchen . . . ."  (Id. at 250.)  Kolbes told one female

sales associate to wear her hair down and wear something more low cut.  (Id. at 251.)  He would

stand in front of another female sales associate and block her way, put his arm around her, and call

her sweetheart and honey, even though she asked him not to do so.  (Id.)  Kolbes told another female

sales associate that she could not wear Janis's suit coat (which she wore sometimes when it was

cold) because "that's not proper attire for a sexy woman."  (Id. at 252.)  He would also comment if

that sales associate wore wrinkled clothes.  (Id.)  Kolbes also harassed women by "putting his arm

around them when they specifically told him no to."  (Id. at 250-51.) Janis witnessed Kolbes put his

arm around four female sales associates, including Nancy McDonough, for approximately three or four seconds on each occasion. (Id. at 271-77.)

Janis eventually called Dan Welch, General Manager for the seven La-Z-Boy stores in Southeastern Pennsylvania, Delaware and Southern New Jersey, about these problems with Kolbes. (Janis Dep. at 127; Welch Decl. ¶ 1.) He does not remember when he called Welch. (Id. at 131.) During the call, Janis told Welch that Kolbes was taking sales off the floor from sales associates and that he had problems with women. (Janis Dep. at 127-28.) Welch came into the store a few days later, on a day when Kolbes was not in the store. (Id. at 132.) Janis met with Welch and told him about Kolbes putting his arm around women, making derogatory statements to women, and telling women, specifically Nancy McDonough, what they can and cannot wear. (Id. at 133, 140.) Janis also told Welch about Kolbes taking peoples' sales and not putting his name on the "ups" list. (Id. at 139.) Janis also complained to Welch that Kolbes was making him perform duties, like doing the books from the previous night, that were not part of his job. (Id. at 144.) After this meeting, Kolbes's behavior improved for four or five days and then he reverted to his "old style." (Id. at 145.)

Janis eventually made a second call to Welch, complaining about the sales associates' continuing problems with Kolbes. (Id. at 171-72.) Welch subsequently called a meeting which was held in February, March, or April, 2004, probably in late March. (Id. at 151, 170.) Kolbes, Welch, Janis and Ken Hampson attended that meeting, which was held in the store. (Id. at 170.)  During the meeting, they discussed Janis's complaints about Kolbes taking other peoples "ups" and about Kolbes making inappropriate comments to women. (Id. at 172-73.) Welch said that something would be done about it. (Id. at 173.) They also discussed sales performance, then Welch told Janis he could go. (Id.)  After Janis left, Welch spoke with Kolbes and Hampson for a little while. (Id.)

The meeting lasted around half an hour.  (Id. at 179.)

Janis's last day of work was Sunday, April 25, 2004.  (Id. at 218, 240.)  On that day, about an hour before closing, Janis checked his sales on the computer and saw that a couple of his sales had been rewritten in Kolbes's name.  (Id. at 217, 219, 223.)  He also saw Kolbes give fabric samples to a customer to take home.  (Id. at 219.)  Janis complained to Kolbes about his allowing customers to bring home fabric samples since no one else was allowed to give out samples for people to take home.  (Id. at 219-20.)  Their discussion about the fabric samples turned into an argument and, during the argument, Janis told Kolbes "while we're on the subject . . . I also don't appreciate you taking my sales."  (Id. at 220.)  Janis accused Kolbes of taking his sale of a leather sofa.  (Id. at 224.)  Kolbes told Janis that the customer had complained about something and that he was the store manager, was authorized to do something on the sale, and was taking control of the sale.  (Id. at 224.)  Kolbes took the entire commission away from Janis.  (Id. at 226.)  When Janis complained again, Kolbes walked away and said he wouldn't deal with Janis anymore.  (Id.)  A little while later, Janis complained to Kolbes because Kolbes left fabric samples out and Janis didn't want to clean them up.  (Id. at 227.)  After that, they got into an argument and Janis brought up the fabric samples and the leather couch sale again.  (Id. at 228.)  Kolbes then told Janis to leave and not to come back on Monday.  (Id. at 217-18, 229.)  Janis testified at his deposition that he believes that Kolbes fired him because he complained about his commissions being taken.  (Id. at 235.)  After extensive questioning, Janis testified that he could not think of any other reason why Kolbes would have fired him.  (Id. at 235-36.)

Four or five days after Janis's last day at the Langhorne store, Welch called him to find out why he hadn't been at work.  (Id. at 229.)  Janis told Welch that Kolbes told him not to come back.

(Id.)  Janis subsequently received a letter dated April 30, 2004 from La-Z-Boy terminating his employment effective April 30, 2004 because he had not reported to work since Sunday, April 25, 2004.  (Def. Ex. 13.)

Janis filed a charge of discrimination with the EEOC (the "Charge") on August 3, 2004 in the form of a letter written by his counsel.  (Def. Ex. 5.)  This Charge was brought by Sharon Kennedy and John Janis and states that Janis was discriminated against on the basis of his gender, but does not mention any specific discrimination suffered by Janis.  The Charge also states that Janis and Kennedy were forced to quit their employment with La-Z-Boy because they were upset by "the pervasive disparate treatment and open discriminatory animus."  (Id. at 3.)  Janis completed an Allegations of Employment Discrimination form in which he stated that he was harassed in retaliation for challenging Kolbes on his violation of store procedures such as Kolbes rewriting sales in his name.  (Def. Ex. 6 at 1.)  He did not say, on this form, that he was retaliated against for complaining about Kolbes's harassment of female sales associates, nor did he describe the nature of the retaliation he suffered.  (Id.)  On February 3, 2005, Plaintiff's counsel asked the EEOC to discontinue its investigation and issue a right to sue letter.  (Def. Ex. 11.)  Two weeks later, on February 16, 2005, Janis's counsel sent a new version of the EEOC Charge, on the proper form, to the EEOC and asked that the new Charge be back dated to August 5, 2004.  (Def. Ex. 7.)  On the new Charge form, Janis checked the boxes noting that his cause of discrimination is based on retaliation and sexual harassment and stated, in a narrative attached to the form, that the "pervasive disparate treatment and open discriminatory animus was so upsetting to . . . me that I was forced to quit . . . ."  (Id.)  This new Charge does not state what kind of retaliation Janis suffered.  (Id.)

After Defendant filed its Motion for Summary Judgment, Janis prepared an Affidavit which

contradicts some of his deposition testimony.  In his Affidavit, Janis states that Kolbes's treatment of him changed as a result of his complaint to Welch about Kolbes's harassment of and discrimination against female sales associates and that Kolbes subsequently treated him in a derogatory and demeaning manner.  (Janis Aff. ¶¶ 6-7.)  He also states, in his Affidavit, that he was not given commissions he was owed after he complained to  Welch.  (Id. ¶ 8.)  He further states that his second complaint about Kolbes occurred within a month of his firing.  (Id. ¶ 11.)  Janis also states that, after his second complaint to Welch, Kolbes "consistently yelled at me, made unwarranted outbursts, and reprimanded me for things that were not enforced against other employees"; Kolbes also forced Janis to clean up after him, and intended to fire Janis for any reason he could find.  (Id. ¶¶ 13, 14, 16.)  Janis also states that he believes that Kolbes used his complaints about his commissions being stolen as an excuse to fire him.  (Id. ¶ 17.)

The Complaint alleges two claims against La-Z-Boy.  The Complaint asserts that Janis was terminated and his pay was reduced in retaliation for his complaints about Kolbes's harassment of and discrimination against women in violation of Title VII (Count I); and that Janis was wrongfully terminated for complaining that Kolbes stole his sales commissions (Count IV).[1]

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

---

[1]Plaintiff has informed the Court that he wishes to proceed against Defendant on Counts I and IV of the Complaint only and that he is not proceeding on Counts II and III, which assert claims of hostile work environment and disparate treatment in violation of Title VII (Count II) and the Pennsylvania Human Relations Act (Count III).  (Pl. Mem. at 1.)

56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate an absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "material" if it may affect the outcome of the matter pursuant to the underlying law. Id. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

III.     DISCUSSION

Defendant argues that Janis's retaliation claim should be dismissed because he failed to exhaust his administrative remedies with respect to that claim.  Defendant also argues that Janis's retaliation claim should be dismissed on the merits because the evidence before the Court is insufficient to support a claim that he was fired, or that his pay was reduced, in retaliation for his complaints about Kolbes's treatment of female sales associates.  Defendant further argues that Janis's wrongful discharge claim should be dismissed because a claim that an employee has been terminated for complaining that his employer has failed to pay commissions does not implicate a public policy of the Commonwealth of Pennsylvania and, therefore, does not give rise to a wrongful discharge claim.

A.     The Retaliation Claim

Janis asserts, in Count I, that he was fired by Kolbes, and suffered a loss of wages, in

retaliation for his complaints to Welch that Kolbes had harassed and discriminated against female sales associates. "[B]efore filing a suit claiming violations of Title VII, a plaintiff must exhaust his administrative remedies by filing a timely discrimination charge with the EEOC." Hartwell v. Lifetime Doors, Inc., Civ.A.No. 05-2115, 2006 WL 381685, at * 17 (E.D. Pa. Feb. 16, 2006) (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir.1984)). Plaintiff's claims are, thereafter, "limited to claims that are within the scope of the original administrative charge." Id. (citing Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.1996)). The exhaustion of administrative remedies is required to "give notice to the charged party and to promote voluntary compliance without litigation." Yang v. AstraZeneca, Civ.A.No. 04-4626, 2005 WL 327539, at * 3 (E.D. Pa. Feb. 10, 2005) (citing Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp. 2d 405, 409 (E.D. Pa.1998)). The test for determining whether a claimant has exhausted administrative remedies is "whether the acts alleged in the subsequent suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Id. (citing Antol v. Perry, 82 F.3d at 1295); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). "The determination 'turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it.'" Id. (quoting Galvis v. HGO Servs., 49 F. Supp. 2d 445, 448-49 (E.D. Pa.1999)).

Defendant argues that Janis did not satisfy his administrative remedies with respect to his retaliation claim because he did not assert this claim in any of his EEOC filings. Janis's first Charge filed with the EEOC, the letter dated August 3, 2004, did not mention retaliation. The first Charge describes the disparate treatment of female employees and states that Janis resigned his employment because the "discriminatory treatment was so pervasive and severe." (Def. Ex. 5 at 1.) Janis states,

in his Allegations of Employment Discrimination form, that he was retaliated against for complaining that Kolbes had rewritten sales in his own name, but did not state that he was retaliated against for complaining about sexual discrimination or harassment.  (Def. Ex. 6.) The Allegations of Employment Discrimination form does not include any description of the retaliation suffered by Janis and does not state that he was fired by Kolbes.  (Id.)  In Janis's second EEOC Charge, which was mailed to the EEOC on February 16, 2005, he checked the box for retaliation but did not state the nature of the retaliation.  The second Charge also does not state that Plaintiff was terminated in retaliation for complaining about sexual discrimination and harassment, indeed, the narrative attached to the Second Charge states that Janis quit.  (Def. Ex. 7 at 2.)  The second Charge does not include any mention of a reduction in pay.  (Def. Ex. 7.)

Defendant contends that these filings do not create an EEOC charge that Plaintiff was fired, or that his pay was reduced, in retaliation for complaining about Kolbes's discrimination against and harassment of female sales associates.  Defendant relies on Yang v. AstraZeneca, in which the court found that Yang's EEOC charge did not establish a charge for discrimination on the basis of race, gender or national origin because those boxes were not checked on the Charge form and because the narrative section of the Charge did not mention those claims, even though the Charge Questionnaire mentioned those bases of discrimination:

> Defendant argues that the charges filed by Plaintiff address only her claims of discrimination on the basis of her disability and do not contain allegations of discrimination on the basis of race, national origin, or gender.  I agree.  Although Plaintiff argues that the failure to check the boxes for race, national origin, or gender was a clerical error committed by the EEOC, the narrative of the charges are devoid of any allegations of such discrimination.  Rather, they are limited solely to discrimination based upon Plaintiff's alleged disability.  Furthermore, even if the boxes for race, national origin, or gender

10

discrimination had been checked, the charges would still be insufficient to establish those charges without supporting allegations in the narrative section of the charge.  Johnson v. Chase Home Fin., 309 F. Supp. 2d 667, 672 (E.D. Pa. 2004).  Plaintiff argues that the necessary allegations were made in her June 26, 2003, Charge Questionnaire filed with the EEOC. However, making allegations on the questionnaire is insufficient to exhaust administrative remedies. Rather, the allegations must appear in the formal charge signed by the claimant and served on the respondent.  Id.; see also Rogan, 113 F. Supp. 2d at 788.

Yang, 2005 WL 327539, at *3-*4.

The Court finds that neither of the Charges which Plaintiff filed with the EEOC established a charge that Janis was terminated, or that his pay was reduced, in retaliation for his complaints about Kolbes's discriminatory treatment of women.  Consequently, the Court further finds that Janis has failed to exhaust his administrative remedies with respect to this claim.  Defendant's Motion for Summary Judgment is, therefore, granted with respect to Plaintiff's Title VII retaliation claim in Count I of the Complaint.[2]

---

[2]The Court would grant Defendant's Motion for Summary Judgment as to Count I of the Complaint even if Plaintiff had exhausted his administrative remedies as to his claim for retaliation in violation of Title VII.  There is no direct evidence of retaliation in this case.  "In the absence of direct evidence of retaliation, retaliation claims . . . typically proceed under the McDonnell Douglas framework."  Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (citations and footnote omitted). Plaintiff must first establish a prima facie case by showing the following: "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action."  Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001) (citations omitted).   The burden then shifts to Defendant to "'articulate some legitimate, nondiscriminatory reason'" for terminating Plaintiff.  Woodson, 109 F.3d at 920 n.2 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994)). Defendant satisfies its burden if it "articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge."  Id. (citing Fuentes, 32 F.3d at 763.)  If the Defendant satisfies its burden, the Plaintiff then has the burden of proving that the reason articulated by the Defendant is a mere pretext for the unlawful retaliation.  Id.
Defendant argues that Janis cannot meet his burden of establishing a prima facie case of

B.      Wrongful Discharge

Janis claims, in Count IV, that he was wrongfully discharged under Pennsylvania common law for complaining to Kolbes about Kolbes unlawfully taking his sales commissions.  Defendant argues that Janis's wrongful discharge claim should be dismissed because Pennsylvania does not recognize a claim for wrongful discharge in these circumstances.

_____

retaliation because there is no evidence before the Court of a causal link between Janis's protected activity (his complaints about Kolbes's discriminatory treatment of women) and his alleged reduction and pay and termination.  During Janis's testimony, under oath, at his deposition, Janis did not connect his termination or loss of wages to his complaints about Kolbes's treatment of women. Instead he testified that the only reason Kolbes had for terminating him was that he complained that Kolbes took his sales.  (Janis Dep. at 218-240.) Janis has attempted to create this causal connection through his Affidavit which was prepared in response to the instant Motion.  Janis cannot, however, create a genuine issue of material fact regarding the cause of his termination simply by contradicting his own sworn testimony.  In Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999), the Supreme Court recognized that the lower courts

> have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.

Id. at 806 (citations omitted); see also Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.").  Janis's counsel contends that his position on this issue has not changed and that Defense counsel either failed to elicit that fact from Janis during his deposition or prevented counsel from questioning Janis about this issue and clarifying his position.  (Pl. Mem. at 3 n.1, 14-15, Kopf Aff. ¶¶ 6-9.)  However, defense counsel questioned Janis extensively regarding why he believed he was fired during his deposition and Janis's testimony never wavered – he was fired by Kolbes because he confronted Kolbes about taking his sales.  (Janis Dep. at 235-36.)  Moreover, Janis has made no attempt to explain the contradiction or resolve the disparity either in his Affidavit or at any time subsequent to the filing of the Affidavit.  Consequently, the Court will not consider the Affidavit in determining whether a genuine issue of material fact exists regarding Janis's claim of retaliation.  The Court finds, accordingly, that there is no evidence of a causal link between Janis's complaints regarding Kolbes's treatment of female sales associates and his termination and  that Janis has failed to establish a prima facie case of retaliation.

12

Pennsylvania does not recognize claims for wrongful discharge brought by at-will employees

unless the discharge violates a clear mandate of public policy:

> As a general rule, Pennsylvania law does not provide a common law cause of action for the wrongful discharge of an at-will employee such as plaintiff. Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 614 (3d Cir.1992); Paul v. Lankenau Hospital, 524 Pa. 90, 93, 569 A.2d 346, 348 (1990); Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974). Pennsylvania is an employment at-will jurisdiction and an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." Henry v. Pittsburgh & Lake Erie Railroad Co., 139 Pa. 289, 297, 21 A. 157, 157 (1891). See also, Johnson v. Resources for Human Development, Inc., 843 F. Supp. 974, 979 (E.D. Pa.1994); Brown v. Hammond, 810 F. Supp. 644, 645 (E.D. Pa.1993) (An employer's right to terminate an at-will employee is "virtually absolute".); Yetter v. Ward Trucking Corp., 401 Pa. Super. 467, 585 A.2d 1022 (1991).
>
> However, in the most limited of circumstances, exceptions have been recognized where discharge of an at-will employee threatens or violates a clear mandate of public policy. Borse, 963 F.2d at 614; Clay v. Advanced Computer Applications, 522 Pa. 86, 88, 559 A.2d 917, 918 (1989) (If discharge of at-will employee threatens clear mandates of public policy, there is a cause of action against the employer.); Geary, supra. A "clear mandate" of public policy must be of a type that "strikes at the heart of a citizen's social right, duties and responsibilities." Novosel v. Nationwide Insurance Co., 721 F.2d 894, 899 (3d Cir.1983). This recognized public policy exception is an especially narrow one. Burkholder v. Hutchison, 403 Pa. Super. 498, 589 A.2d 721, 724 (1991).

Smyth v. Pillsbury Co., 914 F. Supp. 97, 99 (E.D. Pa. 1996). There is no evidence before the Court

that Janis was not an at-will employee of La-Z-Boy. Thus, his claim for wrongful discharge can only

stand if his termination violated a clear mandate of public policy. The Pennsylvania courts have

recognized that public policy exceptions exist in the following circumstances: when an employee

is fired for serving on jury duty, Reuther v. Fowler & Williams, Inc., 386 A.2d 119 (Pa. Super. Ct.

1978); when a person with a prior conviction has been denied employment, Hunter v. Port Authority

of Allegheny County, 419 A.2d 631 (Pa. Super. Ct. 1980); when an employee is fired for reporting violations of federal regulations to the Nuclear Regulatory Commission, Field v. Philadelphia Electric Company, 565 A.2d 1170, 1180 (Pa. Super. Ct. 1989); and when an employee is fired for filing an unemployment compensation claim, refusing to submit to a polygraph examination, and filing a worker's compensation claim.  Shick v. Shirley, 716 A.2d 590, 597 n.3, 603 (Pa. 1998). Janis's claim does not fall within any of these exceptions.

The Pennsylvania Superior Court has found that firing someone for complaining that they had not been paid sales commissions does not violate a clear mandate of Pennsylvania public policy and, therefore, does not give rise to a claim for wrongful discharge.  See Booth v. McDonnell Douglas Truck Servs., Inc., 585 A.2d 24 (Pa. Super. Ct. 1991).  In Booth, the plaintiff brought a wrongful termination action against his employer after he was fired following a dispute about the sales commissions due to him.  Booth claimed that Pennsylvania's public policy was violated by his firing because the Pennsylvania Constitution prohibits laws which impair the obligations of contracts and because Pennsylvania's Wage Payment and Collection Law "provides statutory protection to the compensation due employees under their contract with the employer." Id. at 28.  Booth argued that "public policy protects contract rights; as MDTS discharged [him] to prevent him from obtaining his rights under the contract, public policy has been violated." Id.  However, the Superior Court found that Pennsylvania did not recognize a wrongful termination claim in such circumstances because any employee in Booth's position could vindicate his rights by bringing an action for breach of contract or under the Wage Payment and Collection Law. Id.  The Superior Court concluded that:

> To adopt Booth's position would mean that any time an employee is
> discharged due to a dispute over compensation due him, the employer
> would be liable because it asserted its position. It is true that Booth

has a right to attempt to enforce the contract as he sees it. It is just as true that MDTS has right to resist what it views to be overreaching by Booth. MDTS has another right: to discharge Booth, an at-will employee, for no reason or any reason. We refuse to hold that an employer who exercises that right because of a dispute over compensation due the employee is liable for wrongful discharge.

Id. at 29.

Plaintiff argues, however, that firing Janis for complaining that his manager was stealing his sales commissions violates a clear mandate of public policy. Plaintiff relies on Fialla-Bertani v. Pennysaver Publications of Pa., Inc., 45 Pa. D. & C.4th 122 (Allegheny County Ct. Com. Pl. 2000). In Fialla-Bertani, the court found that plaintiff alleged a valid claim for wrongful discharge where she had been fired in retaliation for filing a lawsuit to collect wages under the Pennsylvania Wage Payment and Collection Law. Id. at 128. Janis, however, was not fired for filing a lawsuit to collect wages due him under the Pennsylvania Wage Payment and Collection Law. He did not bring such an action in state court until August 2005, more than a year after he was terminated.[3] (Def. Ex. 14.) Janis's claim does not, therefore, fall under the exception found by the Allegheny County Court of Common Pleas in Fialla-Bertani.

The Court finds that Pennsylvania does not recognize a public policy exception to the general rule that at-will employees cannot bring claims for wrongful discharge where an employee is terminated for arguing with his manager about the amount of commissions he is owed. See Booth, 585 A.2d at 29. The Court further finds, accordingly, that Defendant is entitled to judgment as a matter of law on Plaintiff's claim for wrongful termination in Count IV of the Complaint.

_____

[3]On August 12, 2005, more than a year after he was fired, Janis filed a claim against La-Z-Boy for violation of the Pennsylvania Wage and Collection Law in the Bucks County Court of Common Pleas. John Janis, et al. v. La-Z-Boy, No. 2005-05191-19-1. (Def. Ex. 14.)

Defendant's Motion for Summary Judgment is, therefore, granted with respect to Count IV.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JANIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LA-Z-BOY FURNITURE GALLERIES | : | NO. 05-2410 |

O R D E R

**AND NOW**, this 17th day of March, 2006, upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's response thereto, and the Hearing held on March 15, 2006, **IT IS HEREBY ORDERED THAT** said Motion is **GRANTED**.  **JUDGMENT** is hereby entered in favor of Defendant and against Plaintiff.

BY THE COURT:


/s/ John R. Padova
_____
John R. Padova, J.